UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-60410-Civ-SCOLA
(12-60080-Cr-SCOLA)
MAGISTRATE JUDGE P.A. WHITE

HARVEY ZITRON,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

<u>REPORT OF</u>
<u>MAGISTRATE JUDGE</u>

## I. <u>Introduction</u>

The movant, Harvey Zitron, has filed a <u>pro se</u> motion to vacate (Cv-DE#1), pursuant to 28 U.S.C. §2255, challenging the constitutionality of his convictions and sentences, entered following a jury verdict in **case no. 12-60080-Cr-Scola.**

This Cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B),(C); S.D.Fla. Local Rule 1(f) governing Magistrate Judges, S.D. Fla. Admin. Order 2003-19; and, Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts.

The Court has reviewed the movant's motion (Cv-DE#1), along with the movant's supporting memorandum (Cv-DE#4), the government's response (Cv-DE#8) to this court's order to show cause, the Presentence Investigation Report ("PSI"), Statement of Reasons ("SOR"), and all pertinent portions of the underlying criminal file

under attack here, including the trial and sentencing transcripts.[1]

## II. <u>Claims</u>

This court, recognizing that movant is *pro se,* afforded him liberal construction pursuant to <u>Haines v. Kerner</u>, 404 U.S. 419 (1972). As can best be discerned, in his §2255 motion, the movant raises six grounds for relief, as follow:

1. Ineffective assistance of counsel for failing to subject the prosecution to a meaningful challenge. (Cv-DE#4:8).

2. Ineffective assistance of counsel for failing to conduct meaningful pre-trial discovery. (Cv-DE#4:8).

3. Ineffective assistance of counsel for failing to present evidence and to call witnesses to impeach government witnesses. (Cv-DE#4:8).

4. Ineffective assistance of counsel for conducting an improper cross-examination of Jordan Zitron. (Cv-DE#4:8).

5. Ineffective assistance of counsel for failing to object to the testimony of the IRS revenue agent regarding his conclusions and statements concerning the proceeds from the Sohrabel checks (Cv-DE#4:8).

6. Ineffective assistance of trial and appellate counsel and trial court error in connection with the district court's making determinations regarding the amount of income Petitioner failed to report and amount of resulting tax loss

---

[1]The undersigned takes judicial notice of its own records as contained on CM/ECF in those proceedings. <u>See</u> <u>Fed.R.Evid</u>. 201.

2

for sentencing purposes. (Cv-DE#4:8, 32).

### III. <u>Procedural History</u>

In a March 14, 2013, third Superseding Indictment, a grand jury charged Petitioner with five counts of willfully filing false tax returns, in violation of 26 U.S.C. §7206(1). Specifically, Petitioner filed false Form 1040 income tax returns for years 2004 and 2005 (Counts 1-2), and false Form 1040X amended returns for years 2003-2005 (Counts 3-5). Petitioner was also charged with three counts of access device fraud for his use of unauthorized credit cards, in violation of 18 U.S.C. §1029(a)(2) (Counts 6, 8, 10); and two counts of aggravated identify theft in relation to the access device fraud, in violation of 18 U.S.C. §1028A(a)(1) (Counts 7, 9). (CR DE# 45, Third Superseding Indictment).

The Petitioner proceeded to trial. The Eleventh Circuit described the facts introduced at trial in Petitioner's direct appeal as follows:

> Zitron operated a company called Millennium Republic that sold chemical products. In 2002, he suggested to one of Millennium's employees, Cynthia Gentner, that she take over the company. She agreed. Gentner operated the business under the names of two corporations that she formed, Cyn-Lex and Granite Industries. Despite the apparent change in ownership, Gentner testified that she still "did everything [Zitron] asked [her] to do." From 2002 to 2003, at Zitron's behest, Gentner deposited company checks into her personal account, took out cash, and gave that cash to Zitron. That arrangement ended because Gentner feared the effect it might have on her tax returns.

> Zitron came up with another check-cashing scheme in 2003. He instructed Gentner to write checks from Cyn-Lex and Granite Industries to a man named "Charles Sohrabel."

3

"Charles Sohrabel" was the alias of Zitron's friend, Charles Schnabel. Schnabel had used another person's social security number to obtain a fake Virginia driver's license in the name of "Charles Sohrabel." Gentner agreed, even though she knew that "Charles Sohrabel" was Schnabel's alias and that Schnabel did not work for either company. Zitron then told Gentner and Schnabel to go to a convenience store that offered a check-cashing service. Schnabel initially cashed the checks in person, but he later called the storeowner and told him that Gentner was authorized to cash the checks on his behalf. Schnabel did not live in Florida, but every time he visited he would pre-sign 10 to 20 checks each for Cyn-Lex and Granite Industries.

Between January 2003 and December 2005, Gentner cashed 265 checks for Zitron at that store, totaling $2,566,981.60. Gentner then gave that cash to Zitron. The scheme ended after the storeowner told Gentner that he would not cash any more checks unless Schnabel accompanied her and provided valid identification (which he never did).

Zitron did not report a penny of that $2,566,981.60 on his income tax filings, even though it was taxable income (according to the government's tax expert who testified at trial). Instead, on income tax forms that he filed for 2003, 2004, and 2005, he reported negative amounts of adjusted gross income. But during those years, he deposited a total of $820,513.75 in cash into several bank accounts: $425,728.00 into an account held in his own name; $202,277.00 into a joint checking account he owned with a friend; and $192,508.75 into an account he controlled but held in his son Jordan's name (even though Jordan barely remembered opening it and never put any of his own money into it).

Zitron not only failed to report any of the income from his check scheme, he also misused his ex-wife's and son's names and social security numbers to obtain credit cards: one in his ex-wife's name in 2006, and two in his son's name in 2009. He did not have their permission to use their personal identifying information in that way. They discovered the existence of the credit cards only after Zitron had racked up substantial amounts of debt on them.

4

United States v. Zitron, 810 F.3d 1253, 1256-57 (11th Cir. 2016).

Following a five-day jury trial, defendant was convicted of all counts. (CR DE# 76).

Prior to sentencing, a PSI was prepared which revealed, in pertinent part, as follows. With respect to Tax Fraud, the tax loss in this case was $973,249 which resulted in a base offense level of 20, §2T4.1(H). (PSI ¶22). Because the Petitioner failed to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity, the offense level was increased by two levels, §2T1.1(b)(1). (PSI ¶23). Because the offense involved sophisticated means, the offense level was increased by two levels, §2T1.1(b)(2). (PSI ¶24). Because the Petitioner was an organizer, leader, manager or supervisor in a criminal activity that involved less than five participants, the offense level was increased by two levels, §3B1.1(c). (PSI ¶26). This resulted in an adjusted offense level (subtotal) of 26. (PSI ¶28).

With respect to the Access Device Fraud, the guideline for an 18 U.S.C. §129(a)(2) offense was found in §2B1.1 of the guidelines, which provided that an offense involving access device fraud has a base offense level of six, §2B1.1(a)(2). (PSI ¶29). The Petitioner was responsible for actual, probable or intended losses of $42,894. Because the loss was more than $30,000 but not more than $70,000 the offense level was increased by six levels, §2B1.1(b)(1)(D). (PSI ¶30). This resulted in an adjusted offense level (subtotal) of 12. (PSI ¶34).

After making a multiple count adjustment, the PSI concluded that the movant's total offense level was set at 26. (PSI ¶43).

Next, the PSI also revealed that the movant had a total of zero criminal history points, resulting in a criminal history category I. (PSI ¶46).

Based on a total offense level of 26 and a criminal history category of I, the guideline imprisonment range was 63 to 78 months. As to Counts 7 and 9, a term of imprisonment of two years under 18 U.S.C. §1028A(a)(1),(b)(2) was to run consecutive to any other term of imprisonment. (PSI ¶80). Statutorily, as to each of Counts 1-5, the term of imprisonment was 0 to 3 years, 26 U.S.C. §7206. As to each of Counts 6, 8, and 10, the term of imprisonment was 0 to 10 years, 18 U.S.C. §1029(c)(1)(A)(i). As to each of Counts 7 and 9, a term of imprisonment of two years under 18 U.S.C. §1028A(a)(1),(b)(2) was to run consecutive to any other term of imprisonment. (PSI ¶60).

At the December 16, 2013 sentencing hearing, the district court overruled Petitioner's objections to the PSI's calculation of the tax loss; the two-level increase for Petitioner's use of "sophisticated means;" and the two-level increase for Petitioner's aggravating role in the offense. (DE# 130, Sentencing Transcript, at 6, 8, 10). However, the district court sustained Petitioner's objection to the two-level increase for failure to report income from a criminal activity. (Id.:12). As a result, Petitioner's total offense level for the tax fraud and access device fraud counts (Counts 1-5, 6, 8, 10) was 24, yielding a Guidelines sentencing range of 51-63 months of imprisonment. (Id.). For these counts, the court imposed a mid-Guidelines sentence of 57 months. (Id.:24). Combining this term with the mandatory, consecutive, two-year prison terms for Petitioner's convictions of aggravated identity theft (Counts 7, 9), the district court imposed an aggregate prison sentence of 81 months. (Id.).

Movant prosecuted a direct appeal, raising the following arguments.  First, that the tax counts were improperly joined with the access device and identity theft counts. Zitron, 810 F.3d at 1257. Second, that comments made by the government's tax expert on the stand violated his Fifth Amendment right to remain silent and improperly shifted the government's burden of proof. Id. at 1258. Third, the evidence was insufficient to support his conviction for two counts of aggravated identity theft under 18 U.S.C. §1028A(a)(1). Id. at 1260. Fourth, his sentence was procedurally unreasonable because the district court erred in calculating the amount of tax loss and in imposing a two-level role enhancement. Id. at 1260-61.

On **January 21, 2016,** in a written, published opinion, the Eleventh Circuit affirmed all convictions. See United States v. Zitron, 810 F.3d 1253 (11th Cir. 2016). No certiorari review appears to have been filed by the movant.

Thus, the movant's judgment of conviction became final on **Wednesday, April 20, 2016,** when the 90-day period for seeking certiorari review with the U.S. Supreme Court expired.[2] The movant had one year from the time his judgment became final, or no later

---

[2]The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.  Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, United States v. Kaufman, 282 F.3d 1336 (11th Cir. 2002); Wainwright v. Sec'y Dep't of Corr's, 537 F.3d 1282, 1283 (11th Cir. 2007)(conviction final under AEDPA the day U.S. Supreme Court denies certiorari, and thus limitations period begins running the next day). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate.  Sup.Ct.R. 13; see also, Close v. United States, 336 F.3d 1283 (11th Cir. 2003).

than **April 20, 2017,**[3] within which to timely file this federal
habeas petition, challenging the judgment of conviction, following
resentencing. See Insignares v. Fla. Dep't of Corr's,[4] 755 F.3d
1273, 1280 (11th Cir. 2014)(citing Ferreira v. Sec'y, Dep't of
Corr's, 494 F.3d 1286, 1293 (11th Cir. 2007), cert. den'd, 555 U.S.
1149, 129 S.Ct. 1033, 173 L.Ed.2d 315 (2009))(commencing the one
year period from the date of resentencing, where state prisoner was
resentenced as a result of a successful Fla.R.Cr.P. 3.850 motion),
applying Burton v. Stewart, 549 U.S. 147, 127 S.Ct. 793, 166
L.Ed.2d 628 (2007)(other citations omitted). Applying the
anniversary method to this case means petitioner's limitations
period will expire on **April 20, 2017.**

Absent evidence to the contrary, it appears the movant
returned to this court filing this timely, initial §2255 motion on
or about **February 24, 2016,** the date he signed his motion.[5] (Cv-

---

[3]See Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008)(citing Ferreira
v. Sec'y, Dep't of Corr's, 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)(this Court
has suggested that the limitations period should be calculated according to the
"anniversary method," under which the limitations period expires on the
anniversary of the date it began to run); accord United States v. Hurst, 322 F.3d
1256, 1260-61 (10th Cir. 2003); United States v. Marcello, 212 F.3d 1005, 1008-09
(7th Cir. 2000)); see also, 28 U.S.C. §2255.

[4]In Insignares, the Eleventh Circuit found that, for purposes of the AEDPA,
"judgment" refers to the underlying conviction and the most recent sentence that
authorizes a petitioner's current detention. Id. The court noted that a
resentencing results in a new judgment that restarts the AEDPA's one-year statute
of limitations period. Id. (citing Ferreira, at 1292-1293).

[5]"Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed
filed on the date it is delivered to prison authorities for mailing." Williams
v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); see Fed.R.App. 4(c)(1)("If
an inmate confined in an institution files a notice of appeal in either a civil
or a criminal case, the notice is timely if it is deposited in the institution's
internal mail system on or before the last day for filing."). Unless there is
evidence to the contrary, like prison logs or other records, a prisoner's motion
is deemed delivered to prison authorities on the day he signed it. See Washington
v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001); Adams v. United States,
173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed
and delivered to prison authorities for mailing).

DE#1).

## IV. <u>Threshold Issues-Timeliness</u>

The government rightfully does not challenge the timeliness of the movant's motion (Cv-DE#1) with supporting memorandum (Cv-DE#4), because both were filed prior to the expiration of the federal one-year limitations period. <u>See</u> 28 U.S.C. §2255(f).

## V. <u>General Legal Principles</u>

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to §2255 are extremely limited. A prisoner is entitled to relief under §2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. <u>See</u> 28 U.S.C. §2255(a); <u>McKay v. United States</u>, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. §2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004)(citations omitted). The "fundamental miscarriage of justice" exception recognized in <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent ...."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been

9

resolved on direct appeal. <u>Rozier v. United States</u>, 701 F.3d 681, 684 (11th Cir. 2012); <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000); <u>Mills v. United States</u>, 36 F.3d 1052, 1056 (11th Cir. 1994); <u>United States v. Rowan</u>, 663 F.2d 1034, 1035 (11th Cir. 1981). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. <u>Nyhuis</u>, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. <u>Sanders v. United States</u>, 373 U.S. 1, 16, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) ("identical grounds may often be proved by different factual allegations ... or supported by different legal arguments ... or couched in different language ... or vary in immaterial respects").

   The movant raises multiple claims challenging counsel's effectiveness during all stages of the proceeding. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. <u>Strickland v. Washington</u>, 466 U.S. 668, 684–85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When assessing counsel's performance under <u>Strickland</u>, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id</u>. at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance ...." <u>Burt v. Titlow</u>, ___ U.S. ___, 134 S.Ct. 10, 18, 187 L.Ed.2d 348 (2013). To prevail on a claim of ineffective assistance of counsel, the movant must demonstrate (1) that his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) that he suffered prejudice as a result of that deficient performance. <u>Strickland</u>, 466 U.S. at 687-88.

To establish deficient performance, the movant must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. Strickland, supra. See also Cummings v. Sec'y for Dep't of Corr's, 588 F.3d 1331, 1356 (11th Cir. 2009)("To establish deficient performance, a defendant must show that his counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place.")(internal quotation marks omitted). The Court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(en banc), cert. den'd, 531 U.S. 1204 (2001)(quoting Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987)). There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel have in making tactical decisions. Id. at 1317. The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Chandler, 218 F.3d at 1313. Instead the test is whether what counsel did was within the wide range of reasonable professional assistance. Id. at 1313 n.12.

Regarding the prejudice component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 689. A reasonable

probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. A court need not address both prongs of Strickland if the defendant makes an insufficient showing on one of the prongs. Stickland, 466 U.S. at 697. See also Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013); Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004). Further, counsel is not ineffective for failing to raise non-meritorious issues. Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001). Moreover, counsel is not required to present every non-frivolous argument. Dell v. United States, 710 F.3d 1267, 1282 (11th Cir. 2013).

A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Id. at 690-91. To uphold a lawyer's strategy, the Court need not attempt to divine the lawyer's mental processes underlying the strategy. "There are countless ways to provide effective assistance in any given case." Strickland, 466 U.S. at 689. No lawyer can be expected to have considered all of the ways. Chandler, 218 F.3d at 1316.

Since the sentence ultimately imposed upon the defendant is a "result of the proceeding," in order for a petitioner to satisfy the prejudice-prong of Strickland, he must demonstrate that there is a reasonable probability that his sentence would have been different but for his trial counsel's errors. See United States v. Boone, 62 F.3d 323, 327 (10th Cir.)(rejecting the defendant's claim that counsel was ineffective in part because the defendant failed to show "that the resulting sentence would have been different than that imposed under the Sentencing Guidelines"), cert. denied, 516

12

U.S. 1014 (1995). Thus, the Strickland test applies to claims involving ineffective assistance of counsel during the punishment phase of a non-capital case. See Glover v. United States, 531 U.S. 198 (2001)(holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established Strickland prejudice"); Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993). If the petitioner cannot meet one of Strickland's prongs, the court does not need to address the other prong. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. See also Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

Furthermore, a §2255 movant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406-07 (11th Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr's, 697 F.3d 1320, 1333-34 (11th Cir. 2012); Garcia v. United States, 456 Fed.Appx. 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990)(citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)); United States v. Ross, 147 F. App'x 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if

13

it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

As will be demonstrated in more detail below, the movant is not entitled to vacatur on the claims presented.[6] When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the movant a fundamentally trial and due process of law. The movant therefore is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9th Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the movant's apparent assertions, the result of the

---

[6]Briefly, the evidence against the movant was more than sufficient to support his convictions. The movant has not shown that the result of the trial or appeal would have been affected had counsel proceeded differently. Further, no denial of due process has been demonstrated. To the contrary, it is clear after independent review of the record that the movant received a fair trial, and that no constitutional violations occurred. Consequently, he has failed to demonstrate that he is entitled to relief in this collateral proceeding.

Moreover, after independent review of the record in its entirety, any other claims, subclaims, or arguments not specifically addressed in this Report, individually identified, or otherwise subsumed within each of the claims presented herein, have been considered by the undersigned and are found to be without merit, warranting no further discussion.

proceedings were not fundamentally unfair or unreliable. <u>See</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369-70 (1993).

## VI. <u>Discussion</u>[7]

In **claim 1**, Petitioner alleges ineffective assistance of counsel for failing to subject the prosecution to a meaningful challenge. (Cv-DE#4:8).

Contrary to the movant's apparent assertion, movant's counsel was not ineffective, nor was the result of the trial fundamentally unfair or unreliable. <u>See</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369-70 (1993). The fact that the defenses presented at trial were not successful does not mean that counsel's performance was constitutionally ineffective. Defense counsel did not entirely fail to subject the government's case to meaningful adversarial testing.[8] <u>United States v. Cronic</u>, 466 U.S. 648, 659 (1984).

---

[7]To the extent the movant has raised new facts and provided new evidence to the undersigned, for the first time, in his traverse, something which is precluded under federal case law, it has been reviewed, but not considered herein. Thus, if the movant again attempts to raise new arguments or grounds for relief or otherwise provides additional evidence "for the first time in an objection to a report and recommendation, the district court may [and should] exercise its discretion and decline to consider the argument" or new facts. <u>Daniel v. Chase Bank USA, N.A.</u>, 650 F.Supp.2d 1275, 1278 (N.D. Ga. 2009)(<u>citing</u> <u>Williams v. McNeil</u>, 557 F.3d 1287 (11th Cir. 2009); <u>see also</u>, <u>Starks v. United States</u>, 2010 WL 4192875 at *3 (S.D. Fla. 2010); <u>United States v. Cadieux</u>, 324 F.Supp.2d 168 (D.Me. 2004). "Parties must take before the magistrate, 'not only their best shot but all of the shots.'" <u>Borden v. Sec'y of Health & Human Servs.</u>, 836 F.2d 4, 6 (1st Cir. 1987)(<u>quoting</u> <u>Singh v. Superintending Sch. Comm.</u>, 593 F.Supp. 1315, 1318 (D.Me. 1984)).

[8]It appears that the movant might be attempting to raise a claim pursuant to <u>United States v. Cronic</u>, 466 U.S. 648 (1984). In some cases, counsel's failure or inability to subject the prosecution's case to meaningful adversarial testing violates the Sixth Amendment and makes the adversarial process presumptively unreliable. <u>Id</u>. at 659. When such a violation occurs, so as to render the trial presumptively unreasonable, no specific showing of prejudice is required. <u>Id</u>. The Eleventh Circuit applies the <u>Cronic</u> dicta only in a "narrow range of cases" where there is a "fundamental breakdown of the adversarial process," <u>Chadwick v. Green</u>, 740 F.2d 897, 900-01 (11 Cir. 1984), and concentrates instead on whether or not the accused was denied a fair trial. <u>Hammonds v. Newsome</u>, 816 F.2d

Petitioner specifically takes issue with Defense Counsel's failure to effectively cross-examine government witness Cynthia Gentner. He argues that "an objective and reasonable trial attorney would have gone after" government witness Cynthia Gentner, with "guns blazing." (DE#4:15-16).

Review of the record establishes that Defense Counsel conducted a lengthy cross-examination of Gentner. (CR DE# 132, Trial Transcript, p. 93-163). Counsel elicited that Gentner was extremely worried that she would go to jail when she decided to cooperate with the government, thereby undermining her credibility and giving her a motive to falsely put more blame on the Petitioner. (Id.:95-99). Defense Counsel asked Gentner questions about various statements she made to the government, in an effort to highlight inconsistencies. (Id.:101-02). Counsel also cross-examined Gentner at length regarding her relationship with Zitron and the various business incorporated by her alone. (Id.:118-130).

It is evident from the record that Defense Counsel vigorously attacked the truthfulness of Cynthia Gentner's testimony. Moreover, the jury was instructed about weighing the credibility of witnesses. Under these circumstances, the movant has failed to establish deficient performance or prejudice arising from his alleged failure to subject the government's case to meaningful testing.

Furthermore, Petitioner's argument that counsel conducted an ineffective cross-examination of Gentner consists primarily of conclusory statements, rather than asserting specific questions

611, 613 (11 Cir. 1987). In this case, the movant was in no way denied a fair trial. As indicated herein, the record demonstrates that counsel subjected the government's case to a meaningful challenge.

counsel failed to ask. Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr's, 697 F.3d 1320, 1333–34 (11th Cir. 2012). Petitioner is not entitled to relief on this ground.

In **claim 2**, Petitioner alleges ineffective assistance of counsel for failing to conduct meaningful pre-trial discovery. (Cv-DE#4:8).

The government attached to its response, email correspondence between the government and Defense Counsel which shows the discovery process in Petitioner's case. (Cv DE# 8, Ex. A). The trial began on July 8, 2013. (CR DE# 62). Over a year earlier, on June 12, 2012, the AUSA sent 3000 documents to Defense Counsel. (Cv DE# 8, Ex. A; CR DE# 23, 6/12/12, First Response to Standing Discovery Order by AUSA). After the District Court granted the government's motion for a protective order on June 13, 2012, the AUSA sent defense counsel additional discovery. (Cv DE# 8, Ex. A). The government filed a second discovery response on August 9, 2012. (CR DE# 29). The parties held their first discovery conference on August 21, 2012 and the government sent additional discovery to Defense Counsel on January 4, 2013. (CV DE# 8, Ex. A).

In light of the foregoing, the record refutes Petitioner's claim that counsel was ineffective in failing to conduct pre-trial discovery. Petitioner fails to show that counsel provided deficient performance, as counsel cooperated fully with the government during the discovery phase, thereby obtaining thousands of documents on which the government planned to rely in prosecuting the Petitioner. Furthermore, Petitioner fails to provide any information to show that but for counsel's failure to conduct meaningful pre-trial discovery, the outcome would have been

different. <u>See Strickland</u>.  He is not entitled to relief under this ground.

In **claim 3**, Petitioner alleges ineffective assistance of counsel for failing to present evidence and to call witnesses to impeach government witnesses. (Cv-DE#4:8).

First, Petitioner takes issue with Defense Counsel's failure to depose several government witnesses prior to the trial. As a result, counsel was not prepared to effectively cross-examine the witnesses at trial.

Federal Rule of Criminal Procedure 15(a)(1) provides: "A party may move that a prospective witness be deposed in order to **preserve testimony for trial**. The court may grant the motion because of **exceptional circumstances** and in the interest of justice." (Emphasis added). The Petitioner fails to point to any exceptional circumstances in his case which would have required defense counsel to preserve testimony for trial.  Furthermore, there was no need to preserve the testimony of the witnesses because they were available and testified at trial.

Next, Petitioner argues that Defense Counsel was ineffective in failing to impeach Gentner with an audio/video recording of her conversation with Petitioner's accountant, Sam May.  Petitioner alleges this recording would have undermined Gentner's credibility. Gentner made the recording at the government's request, without informing Sam May. Defense counsel likely made a strategic decision not to introduce this recording. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. <u>Strickland</u>, 466 U.S. at 690-

91. Petitioner cannot establish that had counsel impeached Gentner with this evidence, the outcome of the trial would have been different. Furthermore, review of Defense Counsel's cross-examination establishes that Defense Counsel asked a variety of questions which sought to undermine Gentner's credibility. See (CR DE# 132, Trial Transcript, p. 93-163).

Petitioner also claims that he requested, and his counsel agreed, to call a handwriting expert to undermine the notion that Schnabel had signed all of the checks written to Schnabel's alter ego, Charles Sohrabel. There is no indication from Petitioner that there existed any known handwriting exemplar from Schnabel that would have provided a sufficient point of comparison for the endorsements on the back of the Sohrabel checks. Petitioner also submits that a tax expert should have been employed by the defense during the trial.

Trial defense counsel is uniquely positioned to address the rationale behind the decision not to call the unnamed witness who purportedly signed the Sohrabel Checks, a handwriting expert, and a tax expert. While Defense Counsel's failure to call these witnesses may constitute deficient performance, Petition fails to show prejudice. Petitioner does not allege how these witnesses would have changed the outcome of his trial. He simply provides conclusory arguments that Defense Counsel was ineffective in failing to call various witnesses and introduce evidence to impeach the government's witnesses. Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr's, 697 F.3d 1320, 1333-34 (11th Cir. 2012).

In light of the foregoing, Petitioner is not entitled to

relief on this ground.

In **claim 4**, Petitioner alleges ineffective assistance of counsel for conducting an improper cross-examination of Jordan Zitron. (Cv-DE#4:8, 24).

By way of background, Joseph Horvath and Michael Horvath testified on behalf of the government regarding Petitioner's prior, but unrelated, check cashing scheme. These witnesses testified to Petitioner's prior bad acts pursuant to Federal Rule of Evidence 404(b)(2), which provides an exception to the hearsay rule:

> Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
>
> (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>
> (B) do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice.

In light of the testimony provided by the Horvaths, Defense Counsel employed a strategy when cross-examining Petitioner's son, Jordan Zitron, with which Petitioner now takes issue. Specifically, Defense Counsel elicited testimony from Jordan Zitron regarding Petitioner's old bookmaking activities in an attempt to explain the testimony from Joseph Horvath that he observed money stacked on Petitioner's kitchen counter years earlier. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Strickland, 466 U.S. at 690-91. Because counsel made a reasonable

strategic decision, Petitioner cannot establish that this line of questioning constituted ineffective assistance of counsel.

Petitioner agues that Defense Counsel should have cross-examined and/or objected to government witnesses Michael and Joseph Horvath on the grounds that they provided improper hearsay testimony of a check-fraud scheme in which Petitioner was involved in 2001. (DE#4:20-21).   Even if counsel had objected, it is unlikely that such objection would have been sustained. The government complied with Rule 404(b)(2) when eliciting testimony from the Horvaths. First, the government filed notice of its intent to introduce evidence under Rule 404(b)(2). (CR DE# 59). Furthermore, Defense Counsel did in fact object and filed a pleading to exclude the Horvaths prior to trial (CR DE# 60).

In light of the foregoing, Petitioner is not entitled to relief on this ground.

In **claim 5**, Petitioner alleges ineffective assistance of counsel for failing to object to the testimony of the IRS revenue agent regarding his conclusions and statements concerning the proceeds from the Sohrabel checks (Cv-DE#4:8).

On November 23, 2012, the government had filed a notice informing the Court and the defense of its intent to call Revenue Agent Tarrago as a summary/expert witness in the field of federal taxation (CR-DE# 35). During the trial, Agent Tarrago was qualified as an expert witness in this field pursuant to Federal Rule of Evidence 702 which allows, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if" he meets the four conditions of that rule.

21

Aside from conclusory statements, Petitioner fails to explain a basis on which Defense Counsel could have successfully objected to IRS Agent Tarrago's testimony. Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr's, 697 F.3d 1320, 1333-34 (11th Cir. 2012). Therefore, he cannot establish prejudice under Strickland.

In **claim 6**, Petitioner alleges ineffective assistance of trial and appellate counsel and trial court error in connection with the district court's making determinations regarding the amount of income Petitioner failed to report and amount of resulting tax loss for sentencing purposes. (Cv-DE#4:8, 32).

Petitioner's claim that the trial court erred in making a determination regarding tax loss was raised on direct appeal. The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. Nyhuis, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. Sanders v. United States, 373 U.S. 1, 16, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) ("identical grounds may often be proved by different factual allegations ... or supported by different legal arguments ... or couched in different language ... or vary in immaterial respects").

In United States v. Zitron, the Eleventh Circuit asserted the
following:

> Zitron challenges his sentence as procedurally
> unreasonable, contending that the district court erred in
> calculating the amount of tax loss . . .
>
> The presentence investigation report calculated the
> amount of tax loss using the full amount of the Sohrabel
> checks—$2,566,981.60. Under the sentencing guidelines,
> that amount yielded a tax loss figure of $973,249.00 and
> a base offense level of 20 under U.S.S.G. §2T4.1(H). Over
> Zitron's objection, the district court adopted that tax
> loss figure. Zitron argues that using the full amount of
> the Sohrabel checks to calculate the tax loss figure was
> error because the government proved that Zitron actually
> deposited only $820,513.75.FN8
>
> > FN8 Using $820,513.75 to calculate the tax
> > loss figure would have yielded a base offense
> > level of 18 under the guidelines. U.S.S.G.
> > §2T4.1(G).
>
> We review the district court's calculation of the tax
> loss figure for clear error. United States v. Patti, 337
> F.3d 1317, 1323 (11th Cir.2003). The court must "simply
> make a reasonable estimate" of the tax loss "based on the
> available facts." U.S.S.G. §2T1.1 cmt. n. 1. The "tax
> loss is the total amount of loss that was the object of
> the offense (i.e., the loss that would have resulted had
> the offense been successfully completed)." Id. §
> 2T1.1(c)(1).
>
> The "object" of Zitron's check-cashing scheme was the
> full amount of the Sohrabel checks, not just the
> $820,513.75 that ended up in the bank accounts he owned
> or controlled. The government's tax expert testified at
> trial that he examined Cyn-Lex's and Granite Industries'
> bank records, as well as the checks themselves, to
> calculate the amount of those checks. He also presented
> check schedules to show that the total amount of the
> checks was $2,566,981.60. Nothing in the guidelines
> required the district court to consider only the checks
> that Zitron actually deposited. And it does not matter
> (as Zitron alleges) that some of the $2,566,981.60 might
> later have gone to Schnabel as a "commission" for his

help in the scheme, since Gentner testified that she gave all the cash to Zitron. See Id. §2T1.1 cmt. n.2 ("In determining the total tax loss attributable to the offense ... all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan ...."). The district court did not clearly err in finding that Zitron received the full $2,566,981.60, even if only a portion of that money went into his account.

810 F.3d 1253, 1260-61 (11th Cir. 2016).


Petitioner's claim that the District Court erred in calculating the tax loss is procedurally barred as it was considered by the Eleventh Circuit, and rejected, on direct appeal. To the extent Petitioner alleges a violation of the holding in Apprendi v. New Jersey, 530 U.S. 466 (2000), the Eleventh Circuit Court of Appeals previously has decided this issue contrary to movant's assertion. It has opined that "a district court may make additional factual findings under a preponderance of the evidence standard, that go beyond the facts found by the jury, so long as the court recognizes the Guidelines are advisory." United States v. Dean, 487 F.3d 840, 854 (11th Cir. 2007). Accordingly, the district court does not violate Apprendi when it imposes a sentencing enhancement based on the court's factual determinations regarding the extent of the tax loss. United States v. Ervin, 517 Fed. Appx. 734, 742 (11th Cir. 2013) (Unpub.), citing United States v. Snipes, 611 F.3d 855, 871 n.8 (11th Cir.2010).


In addition, Petitioner's claim that the District Court erred in calculating the amount of income Petitioner failed to report is also procedurally barred because Petitioner could have, but did not, raise this issue on direct appeal. A defendant must assert an available challenge to a sentence on direct appeal or be barred from raising the challenge in a section 2255 proceeding. Greene v.

24

United States, 880 F.2d 1299, 1305 (11th Cir. 1989).

Petitioner also alleges that trial counsel and appellate counsel were ineffective for failing to object to the District Court's determination regarding the tax loss and the amount of income Petitioner failed to report. First, appellate counsel raised the tax loss issue on appeal. Although appellate counsel did not raise the unreported income issue on direct appeal, Petitioner has failed to establish that but for appellate counsel's failure to do so, the outcome would have been different. An appellate attorney makes strategic decisions to raise the strongest issues. In addition, trial counsel took issue in objections to the PSI with the figures regarding unreported income and tax loss in the PSI. (CR DE# 83). Trial counsel cannot be deemed ineffective in failing to raise an issue that counsel did in fact raise. (Id.).

To the extent movant claims he is actually innocent of all offenses, that claim also warrants no relief. A habeas petitioner attempting to establish "actual innocence" must meet a high standard. Bousley v. United States, 523 U.S. 614 (1998). He must demonstrate that "in light of all the evidence, 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, supra at 623, quoting, Schlup v. Delo, 513 U.S. 298, 327-328 (1995). The Court emphasized that actual innocence means factual innocence, not mere legal insufficiency. Id. See also High v. Head, 209 F.3d 1257 (11 Cir. 2000); Lee v. Kemna, 213 F.3d 1037, 1039(8 Cir.2000); Lucidore v. New York State Div. of Parole, 209 F.3d 107 (2 Cir. 2000)(citing Schlup v. Delo, 513 U.S. 298, 299, (1995); Jones v. United States,153 F.3d 1305 (11 Cir. 1998)(holding that appellant must establish that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him). To be credible, a claim of actual

innocence requires the petitioner to "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup v. Delo, 513 U.S. at 324. All things considered, the evidence must undermine the Court's confidence in the outcome of the trial. Id. at 316. No such showing has been made here, and in fact, the movant's protestations of innocence are refuted by the record. Under these circumstances, the movant is entitled to no relief on this basis. Further, he also cannot fault counsel for failing to pursue this nonmeritorious claim.

Finally, it is noted that this court has considered all of the movant's claims for relief. See Dupree v. Warden, 715 F.3d 1295 (11th Cir. 2013)(citing Clisby v. Jones, 960 F.2d 925 (11th Cir. 1992)). For all of his claims, petitioner has failed to demonstrate that he is entitled to the relief requested. In other words, he has failed to satisfy Strickland's deficient performance and/or prejudice prong. Thus, to the extent a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed herein, the claim was considered and found to be devoid of merit, warranting no specific discussion herein.

## VII. **Evidentiary Hearing**

Movant is also not entitled to an evidentiary hearing on the claims raised in this proceeding. Movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. See Schriro v. Landrigan, 550 U.S. 465, 473-75, 127 S.Ct. 1933, 1939-40, 127 S.Ct. 1933 (2007)(holding that if record refutes the factual allegations in

the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). <u>See also</u> <u>Townsend v. Sain</u>, 372 U.S. 293, 307 (1963); <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989), <u>citing</u>, <u>Guerra v. United States</u>, 588 F.2d 519, 520-21 (5th Cir. 1979)(holding that §2255 does not require that the district court hold an evidentiary hearing every time a section 2255 petitioner simply asserts a claim of ineffective assistance of counsel, and stating: "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.").

## VIII.  <u>Certificate of Appealability</u>

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." <u>See</u> Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts. A §2255 movant "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. §2253(c)." <u>See</u> <u>Fed.R.App.P</u>. 22(b)(1). Regardless, a timely notice of appeal must still be filed, even if the court issues a certificate of appealability. <u>See</u> 28 U.S.C. §2255 Rule 11(b).

However, "[A] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a

constitutional right." See 28 U.S.C. §2253(c)(2). To make a substantial showing of the denial of a constitutional right, a §2255 movant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336-37 (2003) (citations and quotation marks omitted); see also Slack v. McDaniel, 529 U.S. 473, 484 (2000); Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001).

After review of the record in this case, the Court finds the movant has not demonstrated that he has been denied a constitutional right or that the issue is reasonably debatable. See Slack, 529 U.S. at 485; Edwards v. United States, 114 F.3d 1083, 1084 (11th Cir. 1997). Consequently, issuance of a certificate of appealability is not warranted and should be denied in this case. Notwithstanding, if movant does not agree, he may bring this argument to the attention of the District Judge in objections.

## IX.  Conclusion

For all of the foregoing reasons, is therefore recommended that this motion be DENIED on the merits; that no certificate of appealability issue; and, that the case be closed.

Objections to this report may be filed with the Chief Judge within fourteen days of receipt of a copy of the report.

SIGNED this 4th day of April, 2017.

28

UNITED STATES MAGISTRATE JUDGE


cc:  Harvey Zitron, <u>Pro Se</u>
     Reg. No. 99799-004
     Miami FCI
     Federal Correctional Institution
     Inmate Mail/Parcels
     Post Office Box 779800
     Miami, FL 33177

     Harry C. Wallace , Jr.
     United States Attorney's Office
     500 E. Broward Blvd., Suite 700
     Fort Lauderdale, FL 33394
     954-660-5791
     Fax: 954-356-7336
     Email: harry.wallace@usdoj.gov